UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICK LAMAR BANKS,                           Case No. 10-10561

        Plaintiff,                                    Patrick J. Duggan
vs.                                            United States District Judge

JAMES TWARDESKY, *et al.*,                     Michael Hluchaniuk
                                               United States Magistrate Judge
        Defendants.
_____/

# REPORT AND RECOMMENDATION
# MOTION FOR SUMMARY JUDGMENT (Dkt. 17)

**I.   PROCEDURAL HISTORY**

Plaintiff filed a complaint, pursuant to 42 U.S.C. § 1983, alleging that defendants used excessive force in violation of his constitutional rights during and after a high speed chase and his arrest.  (Dkt. 1).  This matter was referred to Magistrate Judge Donald A. Scheer on March 16, 2010.  (Dkt. 16).  It was reassigned to the undersigned on September 22, 2010.  (Dkt. 19).  On August 23, 2010, defendants filed a motion for summary judgment.  (Dkt. 17).  On November 1, 2011, plaintiff filed a response.  (Dkt. 23).  Defendants filed a reply on November 12, 2010.  (Dkt. 24).  Pursuant to notice, the Court held a hearing on November 30, 2010.  (Dkt. 21).  This matter is now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that defendants' motion for summary judgment be **GRANTED**.

## II. FACTUAL BACKGROUND

On the night of June 4, 2009, plaintiff was riding as a back-seat passenger in a car driven by Mr. Gary McCree. (Dkt. 23, Ex. A, plaintiff's dep, p. 43). Mr. McCree picked up plaintiff and, along with a third individual, proceeded over to Mr. McCree's girlfriend's apartment. *Id*. at 44. According to plaintiff, while at the apartment, Mr. McCree and his girlfriend got into a verbal altercation, at which time Mr. McCree got back in the vehicle and the three men left the apartment with the intent to take Mr. Banks to his girlfriend's house. *Id*. at 44-45. According to defendants, a domestic assault of Mr. McCree's girlfriend and her sister had been reported. (Dkt. 23, Ex. B, p. 11). At some point, a police vehicle attempted to pull the car over. *Id*. at 46. Mr. McCree initially slowed and pulled to the side but then took off and led the police on a high speed car chase through the City of Warren. *Id*. at 47-50.

Eventually, the vehicle slowed on a residential street and, with the vehicle still in drive and rolling forward, Mr. McCree and front-seat passenger jumped out of the car and fled the scene. *Id*. at 51-52. Plaintiff, seated in the rear passenger seat, testified that he waited for the car to hit the curb and slow down and then exited the vehicle slowly and with his hands raised above his head. *Id*. at 52.

According to plaintiff, on exiting the car, several officers on the scene began screaming different commands at plaintiff for what they wanted him to do, including "contradictory commands" such as: "freeze," "don't move," "stand still," and 'get on the ground." *Id*. at 53. Plaintiff says that he put his hands in the air, turned, and then put his hands on the trunk and bent over in a show of complete submission. *Id*. at 53. Plaintiff then says that defendant Twardesky ran behind him and violently kicked him. (Dkt. 23, Ex. A, p. 53; Dkt. 23, Ex. B, Twardesky dep., p. 20).

According to plaintiff, he then slowly laid flat on the ground, face down, and put his hands behind his back so that he could be hand-cuffed. (Dkt. 23, Ex. A, p. 54; Ex. B, p. 20). While he was on the ground, Twardesky did not attempt to handcuff him for several minutes, because he was by himself and plaintiff was twice his size. (Dkt. 23, Ex. B, p. 21). Eventually, Twardesky approached plaintiff to handcuff him and sprayed plaintiff in the face with pepper spray. (Dkt. 23, Ex. A, p. 54; Ex. B, p. 22). The parties dispute whether plaintiff was exhibiting any signs of resisting at this point. Plaintiff also claims that Twardesky proceeded to unnecessarily drive his knee into plaintiff's back, handcuff him, and then after he was handcuffed, unnecessarily pepper sprayed plaintiff a second time. (Dkt. 23, Ex. A, p. 54). Plaintiff then claims that defendants attempted to yank him up by his arms in order to put him in the police car. (Dkt. 23, Ex. A, p. 56). According

to plaintiff, because of the effects of the pepper spray and the awkward way that he was being lifted, he stumbled back to the ground, after which, defendants lifted him and slammed him against the truck of the vehicle and Twardesky punched him in the back. (Dkt. 23, Ex. A, p. 56). Plaintiff then claims that once he was placed in the rear of the police vehicle, he asked for something to stop the burning from being pepper sprayed twice, but was refused any medical treatment. (Dkt. 23, Ex. A, p. 61).

On December 4, 2009, plaintiff entered into a plea agreement, pleading guilty to a reduced charge of disobeying a lawful command of a police office, which would be taken under advisement for a year. (Dkt. 17, Ex. F). As a condition of this plea agreement, plaintiff executed a release of the City of Warren and all of its agents/employees for all claims arising from the events giving rise to his prosecution. *Id*. Plaintiff signed this plea agreement on December 4, 2009. *Id*. Defendant moves for summary judgment, based in part, on the signed release. Plaintiff contends that the waiver of claims was involuntary and that defendants have not met their burden of showing the release is valid and enforceable.

### III.   ANALYSIS AND CONCLUSION

A.   <u>Standard of Review</u>

Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P.

56(c). In considering a motion for summary judgment, the evidence and all reasonable inferences must be construed in favor of the nonmoving party. *Tanner v. County of Lenawee*, 452 F.3d 472, 477 (6th Cir. 2006). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Rule 56 limits the materials the Court may consider in deciding a motion under the rule: "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995) (citation omitted). Moreover, affidavits must meet certain requirements:

> A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit. The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits.

Fed.R.Civ.P. 56(e)(1). In accordance with Rule 56(e), the Sixth Circuit has held "that documents submitted in support of a motion for summary judgment must satisfy the requirements of Rule 56(e); otherwise, they must be disregarded."

*Moore v. Holbrook,* 2 F.3d 697, 699 (6th Cir. 1993). Thus, in resolving a Rule 56 motion, the Court should not consider unsworn or uncertified documents, *Id.*, unsworn statements, *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-969 (6th Cir. 1991), inadmissible expert testimony, *North American Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1280 (6th Cir. 1997), or hearsay evidence, *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996); *Wiley v. United States*, 20 F.3d 222, 225-226 (6th Cir. 1994). Thus, "[a] party opposing a motion for summary judgment cannot use hearsay or other inadmissible evidence to create a genuine issue of material fact." *Id.*, quoting, *Sperle v. Michigan Dept. of Corrections*, 297 F.3d 483, 495 (6th Cir. 2002) (citation and quotation marks omitted). "In deciding a motion for summary judgment, [the] court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

    B.    <u>Qualified Immunity</u>

The doctrine of qualified immunity means that "'[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Caldwell v. Moore*, 968 F.2d 595, 599 (6th Cir. 1992), quoting, *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Defendants bear the burden of pleading qualified immunity,

but plaintiff bears the burden of showing defendants are not entitled to qualified immunity. *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002).

The Supreme Court had established a two-part test in order to determine whether qualified immunity was applicable to a particular situation. *Saucier v. Katz*, 533 U.S. 194 (2001). The first part of the test involved a determination of whether the facts of the case, viewed in the light most favorable to the plaintiff, "show the officer's conduct violated a constitutional right." *Id*. at 201. If the first question was resolved in the affirmative then the court would decide "whether the right was clearly established." *Id*. If both questions are resolved in the affirmative, then the doctrine of qualified immunity does not apply and the case can proceed. The Supreme Court has revisited their decision in *Saucier* and concluded that the mandatory order of the two-part test for determining if qualified immunity applied was no longer sound based on several factors including judicial economy. *Pearson v. Callahan*, — U.S. —, 129 S.Ct. 808 (2009). While not modifying the factors that should be considered in such a decision, the Court held that sometimes it makes sense to allow the second part of the test to be decided first and that such a decision may resolve the controversy without having to address the first part of the test. In *Pearson*, the § 1983 claim of the plaintiff was based on an allegedly unlawful search conducted by the defendant police officers. Without having to engage in the perhaps more complicated decision of determining whether

plaintiff's constitutional rights had been violated, the Court found that the constitutional right claimed by plaintiff was not clearly established where lower court case law was consistent with the conduct of the officers and "principles of qualified immunity [should] shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law."

As applied in the Sixth Circuit, a three step test has been developed, systematically breaking down the second prong of the *Saucier* test into distinct elements. To establish an exception to the broad qualified immunity, a plaintiff must: (1) establish a violation of a particularized Constitutional right; (2) show that the particularized Constitutional right was so clearly established at the time of the event that any reasonable officer would know that the behavior violated that right; and (3) present facts and evidence sufficient to show that the officer was objectively unreasonable in light of the clearly established particularized right. *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003). According to the Sixth Circuit, if the Court finds that the first two requirements of *Saucier* have been satisfied, the final inquiry is "whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Sample v. Bailey*, 409 F.3d 689, 696 n. 3 (6th Cir. 2005), quoting, *Feathers*, 319 F.3d at 848. The Sixth Circuit relies on the Supreme Court's holding that "[t]he concern of the immunity inquiry is to

acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct." *Sample*, 409 F.3d at 696 n. 3, quoting, *Saucier*, 533 U.S. at 205. "Somewhat more concretely, whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful action generally turns on the 'objective legal reasonableness' of the action, assessed in light of legal rules that were 'clearly established' at the time it was taken." *Sample*, 409 F.3d at 696 n. 3, quoting, *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (internal citation omitted). Thus, the Supreme Court explained that "even if a court were to hold that [an] officer violated the Fourth Amendment by conducting an unreasonable, warrantless search, *Anderson* still operates to grant officers immunity for reasonable mistakes as to the legality of their actions." *Sample*, 409 F.3d at 696 n. 3, quoting, *Saucier*, 533 U.S. at 206. However, as recently noted by this Court, the Sixth Circuit has consistently held that "[w]here the reasonableness of an officer's actions hinge on disputed issues of fact, the jury becomes the final arbiter of ... immunity, since the legal question of immunity is completely dependent upon which view of the facts is accepted by the jury." *Mitchell v. County of Washtenaw*, 2009 WL 909581, *4 (E.D. Mich. 2009), quoting, *Leonard v. Robinson*, 477 F.3d 347, 354, 355 (6th Cir. 2007) (internal quotation marks and citation omitted). "Where ... the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine

liability, and thus summary judgment should not be granted." *Mitchell*, at *4, quoting, *Griffith v. Coburn*, 473 F.3d 650, 656-657 (6th Cir. 2007) (internal quotation marks and citation omitted). However, in *Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1774, 1776 (2007), the Supreme Court viewed a videotape of the incident in question and concluded that it would be impossible for a jury to find in plaintiff's favor. In *Scott*, the Eleventh Circuit was held to have erred by accepting the plaintiff's version of the facts as true even though that version was so conclusively contradicted by the record that no reasonable jury could believe it. *Id.* at 380-81. In other words, the court is not obliged to, and indeed should not, rely on the nonmovant's version where it is "so utterly discredited by the record" as to be rendered a "visible fiction." *Id.* At the summary judgment stage, "once the relevant set of facts is determined and all reasonable inferences are drawn in favor of the plaintiff, to the extent supported by the record, the question whether the detectives' actions were objectively unreasonable is 'a pure question of law.'" *Chappelle v. City of Cleveland*, 585 F.3d 901, 909 (6th Cir. 2009), quoting, *Scott*, 550 U.S. at 381 n. 8. *Dunn v. Matatall*, 549 F.3d 348, 353 (6th Cir. 2008) (explaining that *Scott* "instructs us to determine as a matter of law whether the events depicted on [a] video, taken in the light most favorable to [the nonmoving party], show that the Officers' conduct was objectively reasonable"). Where claimed "material issues of fact" are plainly contradicted by the video evidence of

events in question, summary judgment may be granted in favor of defendants. *See e.g.*, *Griffin v. Hardrick*, 604 F.3d 949, 955-56 (6th Cir. 2010).

The legal principles applicable to plaintiff's claim of excessive force are well-established. "[C]laims that law enforcement officers have used excessive force-deadly or not-in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). In determining whether a constitutional violation based on excessive force has occurred, the Sixth Circuit applies "the objective-reasonableness standard, which depends on the facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene and not with 20/20 hindsight." *Fox v. DeSoto*, 489 F.3d 227, 236 (6th Cir. 2007), citing, *Graham*, 490 U.S. at 395-96. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. "Relevant considerations include 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Fox*, 489 F.3d at 236, quoting, *Graham*, 490 U.S. at 396.

Moreover, under long-standing case law in this circuit, "there undoubtedly is a clearly established legal norm precluding the use of violent physical force against a criminal suspect who already has been subdued and does not present a danger to himself or others." *Harris v. City of Circleville*, 583 F.3d 356 (6th Cir. 2009), citing, *Grawey v. Drury*, 567 F.3d 302 (6th Cir. 2009) ("The general consensus among our cases is that officers cannot use force ... on a detainee who has been subdued" and "is not resisting arrest."); *Bultema v. Benzie County*, 146 Fed.Appx. 28, 35, 37 (6th Cir. 2005) ("when a suspect has already been restrained, the officer's constitutional authority to use force is significantly more circumscribed" and the "the gratuitous use of force on a suspect who has already been subdued and placed in handcuffs is unconstitutional."); *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 905 (6th Cir. 2004) (holding that "no reasonable officer would have continued to spray a chemical agent in the face of a handcuffed and hobbled ... arrestee"); *Phelps v. Coy*, 286 F.3d 295, 302 (6th Cir. 2002) (holding that no reasonable officer would strike a handcuffed arrestee in the head); *Adams v. Metiva*, 31 F.3d 375, 387 (6th Cir. 1994) ("A reasonable person would know that spraying mace on an ... incapacitated person ... would violate the right to be free from excessive force"); *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988) (holding that a "totally gratuitous blow with a policeman's nightstick" to a handcuffed, unresisting suspect was constitutionally unreasonable); *Lewis v.*

*Downs*, 774 F.2d 711, 714 (6th Cir. 1985) (holding that beating and kicking restrained suspects who are in the control of the police is "plainly excessive" force).

Plaintiff does not allege that any force was used outside of scene captured on the videotape. In this case, the video tape evidence is clear. (Dkt. 17, Ex. C, filed in the traditional manner). After a lengthy high-speed chase, plaintiff exits the vehicle with his hands raised, but ignores several loud verbal commands to lie on the ground. Twardesky is alone with plaintiff, as the other officers left the scene and were trying to apprehend the other occupants of the car, who had run off. Twardesky attempts a leg strike to force plaintiff to the ground, which was not successful. At this point, plaintiff finally gets on the ground, but is yelling and swearing at Twardesky, and is visibly quite agitated. After about 30 seconds of this behavior, Twardesky removes a canister of pepper spray from his belt but does not use it. Plaintiff appears to be calmer for about 15 seconds, then begins yelling (e.g., "you gonna pay"), swearing, and is again, obviously agitated. After this goes on for about 20 seconds, the tape shows Twardesky spraying plaintiff with the pepper spray once in the face, and returning the spray canister to his belt. He then waits a few moments, and cuffs plaintiff. Another police vehicle can be seen pulling up across the street and that officer gets out of his vehicle and begins talking to Twardesky. Plaintiff starts yelling and swearing again while Twardesky

tries to turn him over on his back to get him to his feet, causing the other officer to look back at plaintiff and Twardesky. The other officer[1] helped Twardesky pull plaintiff to his feet and they then shoved him into the bumper/rear of the vehicle. It does appear that Twardesky punched plaintiff in the side before they move off camera to apparently place him in the police vehicle. *Id*. There is nothing on the videotape that shows or suggests that Twardesky removed the canister of pepper spray from his belt or sprayed plaintiff a second time.

    In the view of the undersigned, at no point during this entire video could plaintiff be viewed as "subdued" and "not resisting" until the two officers together walked plaintiff off camera and presumably placed him into the police vehicle. Throughout the video, plaintiff was yelling, cursing, verbally threatening, and visibly agitated. Given his size, his behavior, his language, the crime that had been reported, the high speed chase, and the fact that Twardesky was alone with plaintiff through most of the events at issue, the undersigned finds his actions to be objectively reasonable under the circumstances. Plaintiff's claim of a second spraying with the pepper spray is contradicted by the clear videotape evidence. The allegations that the two officers shoved him "too hard" into the back of the vehicle and that Twardesky unnecessary punched him in the side, are at best, an

---

[1] According to Twardesky's deposition testimony, Officer Chris helped him get plaintiff to his feet. (Dkt. 23-3, p. 8).

attempt to use hindsight to judge a split second decision regarding the amount of force necessary in that moment. Given plaintiff's behavior since exiting the vehicle (some of which was witnessed by Chris when he returned to the scene, as depicted on the video), the undersigned concludes that the force used by Twardesky and Chris was *de minimis* and was objectively reasonable under the circumstances. *See e.g.*, *Leary v. Livingston County*, 528 F.3d 438, 443 (6th Cir. 2008) (the Sixth Circuit recently observed that "an excessive-force claimant must show something more than *de minimis* force" and failure to provide evidence that the force used (here, a "karate-type chop" to the head), caused anything more than a "trifling injury" defeats the claim.)[2]; *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (The Constitution does not prohibit "*de minimis* uses of physical force" so long as "the use of force is not of a sort repugnant to the conscience of mankind."). The undersigned concludes that plaintiff has failed to create a genuine issue of material fact as to whether defendants used excessive force and defendants are

---

[2] *Leary* teaches that the "point of the *de minimis* rule is to make it clear that the Constitution does not become a 'font of tort law' that the federal courts 'superimpose [ ] upon whatever systems' the States already have. Otherwise, every minor touching would become actionable, blurring the lines between the state courts' enforcement of their tort laws and the federal courts' enforcement of the Constitution." *Leary*, 528 F.3d at 445 (internal citation omitted). While *Leary* and *Hudson* involved excessive force claims analyzed under the Fourteenth Amendment and the Eighth Amendment, respectively, the same standard applies under a Fourth Amendment analysis. *See Nolan v. Isbell*, 207 F.3d 1253 (11th Cir. 2000) ("the application of *de minimis* force, without more, will not support a claim for excessive force in violation of the Fourth Amendment.").

entitled to qualified immunity because their actions were objectively reasonable.[3]

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendants' motion for summary judgment be **GRANTED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an

---

[3] Given the foregoing conclusions on the merits of plaintiff's claims, the undersigned concludes that it is unnecessary to reach the issue of whether plaintiff's waiver of claims was voluntary or whether the release is valid.

objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

|  |  |
|---|---|
| Date: February 10, 2011 | s/Michael Hluchaniuk<br>Michael Hluchaniuk<br>United States Magistrate Judge |

### CERTIFICATE OF SERVICE

I certify that on February 10, 2011, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Ben M. Gonek and John J. Gillooly.

s/Tammy Hallwood<br>
Case Manager<br>
(810) 341-7887<br>
tammy_hallwood@mied.uscourts.gov